**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------x
  DIN CELAJ,                               :

                                Plaintiff,  :        1:13-cv-1290 (ALC)

          -against-                :

  UNITED STATES OF AMERICA,     :     OPINION AND ORDER

                        Defendants.  :

                                  :
------------------------------------------------------------------x

**ANDREW L. CARTER, JR., United States District Judge:**

A jury convicted Celaj of two counts of Hobbs Act Robbery, one count of Conspiracy to Commit Hobbs Act Robbery, and two counts of Attempted Hobbs Act Robbery. In addition, pursuant to 18 U.S.C. § 924(c), the jury convicted him of one count of Discharging a Firearm, one count of Brandishing a Firearm, one count of Possession of a Firearm. 924(c) compelled the government to prove that each of the three firearms offenses was linked to Celaj's commission of a crime of violence. The government tethered the discharging count to one of the Hobbs Act robberies, the brandishing count to one of the attempted Hobbs Act robberies, and the possession count to the other attempted Hobbs Act robbery.

Attacking his convictions pursuant to 28 U.S.C. § 2255, Celaj claims that his trial counsel was ineffective in five ways and that his § 924(c) convictions are invalid since they are based on crimes that are not crimes of violence.

1

In his initial habeas petition, Celaj raised two ineffective assistance claims based on trial counsel's failure to properly advise him with respect to a plea offer and trial counsel's refusal to allow Celaj to testify in his own defense. The Court grants an evidentiary hearing on his plea-bargaining claim but denies his testifying claim. The three additional ineffective assistance claims raised in amended petitions are denied as time-barred.

Examining the 924(c) convictions requires an appreciation that, as a society, we do not punish thoughts—no matter how nefarious or lurid—as crimes. Every criminal statute requires an act before a defendant may be convicted.

To commit Attempted Hobbs Act Robbery, a defendant need not perfect the robbery, but she must take a "substantial step" toward the completion of the offense. Not every step involved in planning or executing a robbery is a violent one. But some of these non-violent, preliminary steps qualify as a substantial step, establishing the minimum conduct needed to sustain a conviction for Attempted Hobbs Act Robbery. Therefore, since the government is never obligated to prove that the defendant's conduct—not thoughts—manifested the use, attempted use, or threatened use of physical force, Attempted Hobbs Act Robbery is not a crime of violence as defined in 18 U.S.C. § 924 and cannot serve as a predicate for a conviction under that statute.

Accordingly, the two § 924(c) convictions attached to Celaj's Attempted Hobbs Act Robbery convictions are VACATED. However, as discussed below, his § 924(c) conviction for discharging a firearm in the commission of a completed Hobbs Act Robbery stands.

## BACKGROUND

Law enforcement arrested Celaj on July 8, 2007. (07-cr-837). On September 5, 2007, a grand jury indicted him on ten criminal counts including one count of conspiracy to commit Hobbs Act robbery in violation of 18 U.S.C. § 1951 (b)(1) (Count I); one count of Hobbs Act robbery in violation of 18 U.S.C. § 1951 (b)(1) (Count II); one count of attempted Hobbs Act robbery in violation of 18 U.S.C. § 1951(b)(1) (Count III); two counts of conspiracy to violate the Controlled Substances Act in violation of 21 U.S.C. §§ 812, 841(a), and 841(b)(1)(C) (Counts IV and V); one count of conspiracy to transport stolen motor vehicles in violation of 18 U.S.C. § 371(Count VI); one count of mail fraud and one count of conspiracy to commit mail fraud in violation of 18 U.S.C. §§ 1341, 1342 (Counts VII & VIII); and two counts of using a firearm in connection with a crime of violence in violation of 18 U.S.C. 924(c) (Counts 9 & 10). (*Id.* at ECF 13 or "Orig. Indictment").

**Chart 1—Offenses Charged in the Original Indictment**

| Count | Offense | Applicable Mandatory Sentence |
|-------|---------|-------------------------------|
| I | Conspiracy to Commit Hobbs Act Robbery (18 U.S.C. § 1951) | |
| II | Hobbs Act Robbery (18 U.S.C. § 1951) | |

| | | |
|---|---|---|
| | Robbery of money and marijuana in the Bronx | |
| III | Attempted Hobbs Act Robbery (18 U.S.C. § 1951) Attempted Robbery of cocaine in Manhattan | |
| IV | Conspiracy to Violate Controlled Substance Act (21 U.S.C. § 846) | |
| V | Conspiracy to Violate Controlled Substance Act (21 U.S.C. § 846) | |
| VI | Conspiracy to Transport Stolen Motor Vehicles (18 U.S.C. § 2313) | |
| VII | Conspiracy to Commit Mail Fraud (18 U.S.C. § 1341) | |
| VIII | Conspiracy to Commit Mail Fraud (18 U.S.C. §§ 1341, 1342) | |
| IX | 18 U.S.C. § 924(c)(1)(A)(iii) Discharge of firearm during commission of offense in Count I | 10 years consecutive to sentence imposed in Count I |
| X | 18 U.S.C. § 924(c)(1)(A)(iii) Brandishing of firearm during commission of offense in Count II | 25 years consecutive to sentence imposed in Count II |

Before trial, the government offered Celaj a plea agreement. There is no dispute that in the course of extending the offer, the government informed trial counsel, Jeremy Schneider, that if Celaj rejected the offer, the government would supersede the Indictment, adding additional substantive Hobbs Act Robbery and § 924(c) charges. The parties also do not dispute that trial counsel communicated the offer to Celaj; however, Celaj alleges that trial counsel failed to inform him of the post-trial sentencing exposure, specifically as it related to the government's threat to supersede the indictment. (13-cv-1290, ECF 1).

Schneider disputes Celaj's depiction of their communications. In an affirmation submitted to the Court, trial counsel states that he informed Celaj of the government's threat and that a superseded indictment "significantly increased the mandatory minimum sentence [he] would face if convicted." (13-cv-1290, ECF 55 at 26–33 or Schneider Aff. ¶13).

4

Celaj rejected the deal and the government superseded the indictment. (07 Cr. 837 at ECF No. 102, or Sup. Indictment). Relevant to this case, the new indictment dismissed what was originally Count III (attempted Hobbs Act Robbery) and added two new attempted Hobbs Act Robbery counts (Sup. Indictment Counts IV and VI) as well as two new § 924(c) counts for using a firearm in connection with the attempted and Hobbs Act robberies. (Sup. Indictment Counts V and VII). Accordingly, under the new indictment, Celaj faced a mandatory minimum sentence of 82 years.

**Chart 2—Offenses Charged in the Superseded Indictment**

| Count | Offense | Applicable Mandatory Sentence |
|-------|---------|-------------------------------|
| I | Conspiracy to Commit Hobbs Act Robbery (18 U.S.C. § 1951) | |
| II | Hobbs Act Robbery (18 U.S.C. § 1951)<br>Robbery of money and marijuana in the Bronx | |
| III | 18 U.S.C. § 924(c)(1)(A)(ii)<br>Discharge of firearm during commission of offense in Count II | 7 years consecutive to sentence imposed in Count II |
| IV | Attempted Hobbs Act Robbery (18 U.S.C. § 1951)<br>Attempted Robbery of Bobby Brown in Long Island | |
| V | 18 U.S.C. § 924(c)(1)(A)(ii); (C)(1)<br>Brandishing a firearm during commission of offense in Count IV | 25 years consecutive to sentence imposed in Count IV |
| VI | Attempted Hobbs Act Robbery—Substantive Offense<br>Attempted Robbery near Sayville | |
| VII | 18 U.S.C. § 924(c)(1)(A)(I); (C)(I)<br>Possession of a firearm in during commission of offense in Count VI | 25 years consecutive to sentence imposed in Count IV |
| VIII | Hobbs Act Robbery (18 U.S.C. § 1951)<br>Robbery in Pennsylvania | |
| IX | 18 U.S.C. § 924(c)(1)(A)(iii)<br>Discharge of firearm during commission of offense in Count I | 25 years consecutive to sentence imposed in Count VIII |
| X | Conspiracy to Violate Controlled Substance Act (21 U.S.C. § 846) | |
| XI | Conspiracy to Transport Stolen Motor Vehicles and to Receive, Possess, Conceal, Store, Barter, Sell, and Dispose of Stolen Motor Vehicles (18 U.S.C. § 2312 & § 2313) | |
| XII | Transport of Stolen Motor Vehicles (18 U.S.C. § 2312) | |

| XIII | Conspiracy to Commit Mail Fraud (18 U.S.C. § 1341) | |

During trial, the government and trial counsel entered into a stipulation providing:

> IT IS HEREBY STIPULATED AND AGREED by and among the United States of America, by PREET BHARARA, United States Attorney for the Southern District of New York, through John T. Zach and Arlo Devlin-Brown, Asssitant United States Attorneys, of counsel, and DIN CELAJ, the defendant, by and through his attorney, Jeremy Schneider, Esp., that marijuana is grown outside of the state of New York and travels in interstate and foreign commerce to arrive in the New York City area.

The stipulation helped to enable the government to prove the interstate commerce elements of the Hobbs Act Robbery charges. Celaj provides that he did not agree to the stipulation. (13-cv-1290, ECF 28 or Supp. Aff. ¶ 13).

Following a jury trial in this district in front of Judge Patterson, Celaj was convicted of all but two of the Superseding Indictment's 13 counts. Specifically, the jury acquitted Celaj of Counts VIII and IX for Hobbs Act Robbery and the corresponding § 924(c) count. (7-cr-837, ECF 161 or Judgment).

Judge Patterson sentenced Celaj to imprisonment for nine one-month sentences to run concurrently on Counts I, II, III, IV, VI, X,XI, XII, and XIII, and for two 25-year sentences to run consecutively on Counts V and VII for a total of 601 months. (Judgment at 3). Judge Patterson also sentenced Celaj to three years supervised release for each count to run concurrently. (*Id.* at 4).

Celaj appealed his conviction and sentence, both of which were affirmed by the Second Circuit on February 27, 2012. *U.S. v. Celaj*, 649 F.3d 162 (2d Cir. 2011). The

Supreme Court subsequently denied his petition for a Writ of Certiorari on February 27, 2012. *U.S. v. Celaj*, 132 S.Ct. 1636 (2012).

On February 25, 2013, Celaj filed a pro se petition for writ of habeas corpus pursuant to 28 U.S.C. § 2255. (13 Civ. 1290 at ECF No. 1). The petition argued two separate grounds for habeas relief, both of which relied on the claim that Celaj received ineffective assistance of counsel in violation of the Sixth Amendment of the United States Constitution. Ground One claimed that trial counsel failed to advise Celaj properly of the government's plea offer. (*Id.* at 4). Ground Two claimed that trial counsel prevented Celaj from testifying at trial, despite Celaj's request to do so. (*Id.* at 5).

On July 15, 2013, the government responded with its opposition and an affirmation from Celaj's trial counsel. (07 Cr. 837, ECF 189).

On April 22, 2014, Celaj wrote the court requesting appointment of counsel. (13-cv-1290, ECF 16).

Subsequently, Celaj amended his petition on May 27, 2014, asserting two, additional, ineffective assistance of claims for habeas relief. (13-cv-1290, ECF 11). First, Celaj claimed that counsel improperly stipulated to a material, disputed fact, which if not proved by the government, would have resulted in the dismissal of several counts of the indictment. (13-cv-1290, ECF 11 at 5). Second, counsel failed to request that the court question under oath a juror and prosecutor who had extrajudicial conversations about Celaj's case. (*Id.*) The government opposed the amendment, arguing the new claims were time-barred and meritless. (13-cv-1290, ECF 13).

Celaj responded to all the government's submissions by letter dated August 12, 2014. (13-cv-1290, ECF 14). Celaj submitted a subsequent letter to the court on March 8,

2015, requesting appointment of counsel and asserting a fifth ground in support of his habeas petition—that trial counsel had a conflict of interest at the time he represented Celaj. (13-cv-1290, ECF 17).

On July 24, 2015, I granted Celaj's request for appointment of counsel. (13-cv-1290, ECF 18).

With the court's permission, Celaj's new counsel submitted a reply in response to the government's submissions and in further support of Celaj's petition and amended petition. (13-cv-1290, ECF 22, 26).

On June 10, 2016, Celaj's counsel filed a request for a placeholder petition/motion to file a second or successive petition asserting a claim challenging Celaj's § 924(c) convictions in light of the Supreme Court's decision in *Johnson v. United States*, 135 S. Ct. 2551 (2015). (13-cv-1290, ECF 29). Celaj reaffirmed his desire to amend his petition in a July 14, 2017 letter and further requested that consideration of and decision on the petition be stayed pending a rehearing *en banc* petition in *U.S. v. Hill*, 832 F.3d 135 (2d Cir. 2016) and decisions in *United States v. Barrett*, 937 F.3d 126 (2d Cir. 2019) and *Sessions v. Dimaya*, 138 S.Ct. 1204 (2018). (13-cv-1290, ECF 37). The court consented to this request, staying the case. (13-cv-1290, ECF 38). In June 2019, the parties wrote arguing the § 924(c) claim should continue to be stayed pending the Supreme Court's decision in *United States v. Davis*, 139 S.Ct. 2319 (2019). (13-cv-1290, ECF 47).

On November 18, 2019, after the Supreme Court had decided *Davis* and the Second Circuit decided *Barrett*, Celaj filed a supplemental memorandum of law in support of his § 924(c) claim. (13-cv-1290, ECF 48). Briefing concluded January 17,

2020, (ECF No. 52), although Celaj's counsel subsequently submitted supplemental authority. (13-cv-1290, ECF 56, 57).

## I.     INEFFECTIVE ASSISTANCE OF COUNSEL

### A) LEGAL STANDARDS

Pursuant to § 2255, "[a] prisoner in custody under sentence of a court established by Act of Congress…may move the court which imposed the sentence to vacate, set aside or correct the sentence" on the grounds that it "was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack[.]" 28 U.S.C. § 2255(a).

A §2255 habeas petition must be brought within one year from the date of final conviction. 28 U.S.C. § 2255(f)(1). For the purposes of Section 2255, where, as here, a Petitioner has filed a petition for certiorari contesting the appellate court's affirmation of the conviction, the conviction becomes final when the United States Supreme Court denies the petition. *See Green v. United States*, 260 F.3d 78, 84 (2d Cir. 2001). "After that, petitions may be amended only if the new claims 'relate back' to the original petition, meaning that they 'arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading.'" *Ozsusamlar v. United States*, 2013 WL 4623648, at *3 (S.D.N.Y. Aug. 29, 2013) (adopting report and recommendation) (quoting Fed. R. Civ. P. 15(c)(1)(B)).

"In the habeas context, '[a]n amended habeas petition…does not relate back when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading sets forth.'" *Ozsusamlar*, 2013 WL 4623648, at *3 (quoting *Mayle v. Felix*, 545 U.S. 644, 650 (2005)). The original and amended petitions must "state claims that are tied to a common core of operative facts." *Mayle*, 545 U.S. at 664. Amendments must satisfy this rule "even where both the original claims and the new claims are for ineffective assistance of counsel." *Osusamlar*, 2013 WL 4623648 at *4. Relatedly, relation back will not be available "merely because the proposed claims relate to the same trial, conviction, or sentence as the original petition." *Cotton v. Burge*, No. 08-cv-453S, 2009 WL 3165868, at *3 (S.D.N.Y. Sept. 26, 2009).

"A defendant is generally barred from 'collaterally challenging a conviction under § 2255 on a ground that he failed to raise on direct appeal.'" *Rosario Figueroa v. United States*, No. 16-cv-4469, 2020 WL 2192536, at *3 (S.D.N.Y. May 6, 2020) (quoting *United States v. Thorn*, 659 F.3d 227, 231 (2d Cir. 2011)). Ineffective assistance of counsel claims are an important exception to this rule, as they may be raised in a collateral attack regardless of "whether or not the petitioner could have raised the claim on direct appeal." *Massaro v. United States*, 538 U.S. 500, 509 (2003); *see Yick Man Mui*, 614 F.3d 50, 54–55 (2d Cir. 2010); *Naranjo v. United States*, No. 16-cv-7396, 2019 WL 7568186, at *3 (S.D.N.Y. Dec. 16, 2019), *report and recommendation adopted by*, 2020 WL 174072 (Jan. 13, 2020), *aff'd*, 645 Fed. Appx. 50 (2d Cir. 2016). However, even where "a defendant has procedurally defaulted a claim" not subject to exception "by failing to raise it on direct review…the claim may still be raised in a habeas petition if the defendant can 'demonstrate either cause and actual prejudice, or that he is actually

innocent.'" *Rosario Figueroa*, 2020 WL 2192536, at *3 (quoting *Gupta v. United States*, 931 F.3d 81, 84 (2d Cir. 2019) (internal punctuations and citations omitted)).

Where a petitioner raises claims that are neither time-barred nor procedurally-defaulted, "Section 2255 requires the district court to hold a hearing '[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief.'" *Dodakian v. United States*, 2015 WL 11144511, at *23 (S.D.N.Y. Aug. 14, 2015) (quoting 28 U.S.C. § 2255(b)). "To warrant a hearing on an ineffective assistance of counsel claim the defendant need establish only that he has a 'plausible' claim of ineffective assistance of counsel, not that 'he will necessarily succeed on the claim.'" *Puglisi v. United States*, 586 F.3d 209, 213 (2d Cir. 2009) (quoting *Armienti v. United States*, 234 F.3d 820, 823 (2d Cir. 2000) (quoting *United States v. Tarricone*, 996 F.2d 1414, 1418 (2d Cir. 1993)).

To succeed on an ineffective assistance of counsel claim, a petitioner must satisfy the Supreme Court's two-part test established in *Strickland v. Washington*, 466 U.S. 668 (1984):

> "Under *Strickland*, in order to prevail on an ineffective-assistance-of-counsel claim, a defendant must meet a two-pronged test: (1) he 'must show that counsel's performance was deficient,' so deficient that, 'in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance,' and (2) he must show 'that the deficient performance prejudiced the defense,' in the sense that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'"

*Rone v. United States*, No. 15-cv-1417, 2019 WL 5445710, at *5 (S.D.N.Y. Oct. 24, 2019) (quoting *Bennett v. United States*, 663 F.3d 71, 84 (2d Cir. 2011) (quoting *Strickland*, 466 U.S. at 687, 690, 694)).

11

"In applying *Strickland* to a plea offer, 'as a general rule, defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused.' An objectively reasonable attorney must 'properly communicate' and explain any plea offer." *Weston v. United States*, No. 11-cv-2151, 2014 WL 4370034, at *2 (S.D.N.Y. Sept. 2, 2014) (quoting *Missouri v. Frye,* 132 S.Ct. 1399, 1408 (2012)). Where trial counsel's deficient performance caused the Petitioner to reject a plea offer and proceed to a trial that resulted in conviction, to satisfy the *Strickland* prejudice prong, the Petitioner

> [M]ust show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (*i.e.,* that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.

*Lafler v. Cooper*, 566 U.S. 156, 162 (2012).

The court must determine "whether, viewing the evidentiary proffers, where credible, and record in the light most favorable to the petitioner, the petitioner, who has the burden, may be able to establish at a hearing a *prima facie* case for relief." Puglisi, 586 F.3d at 213. Thus, "[t]he procedure for determining whether a hearing is necessary is in part analogous to…a summary judgment proceeding…If material facts are in dispute, a hearing should usually be held, and relevant findings of fact made." *Dodakian v. United States*, 2015 WL 11144511, at *23 (S.D.N.Y. Aug. 14, 2015) (alterations in original), adopting report and recommendation (quoting Puglisi, 586 F.3d at 213). However, "where a petitioner makes only vague, conclusory, or palpably incredible [] allegations,' a hearing is not required, as the petitioner's motion is required to "set forth specific facts

supported by competent evidence, raising detailed and controverted issues of fact that, if proved at a hearing, would entitle him to relief." *Miller v. United States*, 2017 WL 3268204, at *3 (S.D.N.Y. Aug. 1, 2017) (internal quotations and citations omitted) (alteration in original). "Moreover, courts need not presume the credibility of factual assertions 'contradicted by the record in the underlying proceeding.'" Lopez v. United States, 2017 WL 1424328, at *3 (S.D.N.Y. Apr. 20, 2017) (quoting Puglisi, 586 F.3d at 214).

B)      DISCUSSION

The government argues that the court cannot consider any ineffective assistance claims outside of the two original claims. The government contends that the three new ineffective assistance of counsel claims are time-barred because they do not relate back to his original claims. I agree with the government.

**1) Amended Ineffective Assistance of Counsel Claims**

The Supreme Court denied Celaj's petition for a writ of certiorari on February 27, 2012. Celaj had until February 27, 2013 to seek relief under 28 U.S.C. § 2255. Celaj's original habeas petition is dated February 12, 2013 and was filed on February 25, 2013. However, Celaj did not amend his petition until May 19, 2014[1] and March 8, 2015. (13 Civ. 1290. ECF 11, 17). Accordingly, for me to consider the new claims raised in Celaj's

---

[1] The amended petition is dated May 19, 2014. It was received on May 27, 2014 and filed on June 23, 2014.

amended petitions, I would need to find that these claims "relate back" to the original habeas grounds upon which Celaj sought relief.

Celaj's new claims are time barred. It is not enough that both sets of claims allege ineffective assistance of trial counsel, as Celaj's "additional claims must have a clear temporal and factual connection those raised in his original petition." *Ozsusamlar*, 2013 WL 4623648, at 4; *see Veal v. United States*, No. 01 civ. 8033, 2007 WL 3146925, at *4 (S.D.N.Y. Oct. 9, 2007) (quoting *Reiter v. United States*, 371 F.Supp.2d 417, 423–24 (S.D.N.Y. 2005) ("it is not sufficient for an untimely amendment merely to assert the same general type of legal claim as in the original § 2255 motion.")). Celaj's original habeas petition claims concern Schneider's failures to advise him properly regarding the government's plea offer and to allow him to testify. These claims do not share a "common core of operative facts" with Celaj's new claims concerning Schneider's improper stipulation to a material disputed fact, failure to question under oath the prosecutor and juror who had an extra judicial conversation about Celaj's case, and conflict of interest. Although there is some temporal similarity in that all the claims relate to either pre-trial or trial events, there is no factual tie between any new and original claim. Each new claim is based on independent factual grounds and thus, does not relate back. *See Gibson v. Artus*, 407 Fed. Appx. 517, 519 (2d Cir. 2010) (no relation back despite petitioner's arguments that new and old claims both "involve[d] the grand jury stage of proceedings"); *United States v. Marulanda*, 226 Fed. Appx. 709, 710–11 (9th Cir. 2007) (no relation back where new and old ineffective assistance claims all related to trial conduct but shared no "common core of operative facts"); *Ozsusamlar*, 2013 WL 4623648, at *3, (no relation back where original habeas petition claimed, among other

14

things, that trial counsel provided ineffective assistance at sentencing by "fail[ing] to present mitigating evidence" and "not inform[ing] the Government that [Petitioner] was serving as an informant…", and proposed new claims alleged that "trial counsel was ineffective for (1) failing to object to a particular government exhibit on a variety of grounds, and (2) failing to raise facts that directly contradicted the testimony of four witnesses."); *cf. Pierre v. Ercole*, 607 F.Supp.2d 605, 608 (amendment related back where new ineffective assistance of counsel claim arose "out of the same set of operative facts as the due process claim in the original petition. Both are based on the exclusion of statements by the same two unavailable witnesses who, petitioner alleges, would have supported the defense theory that the victim was murdered when petitioner was out of state").

### 2) Original Ineffective Assistance of Counsel Claims

The court next considers whether Celaj's surviving ineffective assistance of counsel claims can be resolved on the submitted record, or alternatively, require an evidentiary hearing.

### a) Plea-Bargaining Claim

To warrant a hearing on his claim that trial "counsel's ineffective assistance led to the rejection of a plea offer that, properly informed, would have been accepted," Celaj needed to "proffer arguably credible evidence of a prima facie case that, but for counsel's

improper advice, [Celaj] would have accepted the plea offer." *Puglisi*, 386 F.3d at 215.

"This may be accomplished through the petitioner's own sworn statement if it is credible

in light of all the relevant circumstances." *Id.* "[A] petitioner's statement is sufficiently

credible to warrant a hearing where it is accompanied by some 'objective evidence,' such

as a significant sentencing disparity, that he or she would have accepted the proposed

plea offer if properly advised." *Id.* at 216; *see King v. United States*, No. 13-cv-7510,

2016 WL 11268958, at *6 (S.D.N.Y. June 17, 2016).

Both Celaj and Schneider submitted sworn affidavits that contradict the other's

version of events. Celaj also submitted a supplemental affidavit after obtaining counsel.

(13-cv-1290, ECF 26-1 or Celaj Supp. Aff.). According to Celaj's sworn affidavit,

Schenider advised that the government's offer was for 22 years. (*Id.* ¶¶ 3–4). Celaj states

that Schneider informed him that if he rejected the offer and was convicted at trial, he

would face a maximum term of 27 years' imprisonment. (*Id.*). Celaj states that Schneider

never informed him that, if he rejected the offer, the government would supersede the

indictment and Celaj could face over 50 years. (*Id.* ¶ 6). According to his statement, if

Schneider had provided the correct information regarding sentencing exposure, Celaj

"would have accepted the government's [sic] (22) year offer without a doubt." (*Id.*)

Schneider asserts that his affirmation is based on notes he took while representing

Celaj. (Schneider Aff. ¶ 5). According to Schneider, during his initial meetings with

Celaj, "Celaj advised…that he wanted to dispose of the case without a trial and that he

was interested in a plea to a proposed sentence of between 20 and 25 years

imprisonment." (*Id.* ¶ 6). Schneider states that the government initially offered Celaj 25

years, an offer he rejected. (*Id.* ¶¶8–9). Schneider told the AUSA Celaj likely would

accept an offer between 15 and 20 years. (*Id.* ¶ 10).  The AUSA "suggested a plea to a proposed guidelines sentence of 22 years imprisonment." (*Id.* ¶11). Schneider told the AUSA that Celaj was unlikely to accept the offer. (*Id.*).

Schneider states that subsequently, the government informed him that they would supersede the indictment adding additional robbery and attendant firearms counts if the case proceeded to trial. (*Id.* at ¶ 12). Schneider "understood that these additional charges would have the effect of 'stacking' mandatory minimum sentences and yield a very high mandatory minimum sentence should Celaj be convicted at trial." (*Id.*) The government further advised that the 22-year offer was the lowest they would provide. (*Id.*)

Schneider states that the day after he spoke to the government, he went to the MDC and spoke with Celaj. (*Id.* ¶ 13). He states he conveyed the AUSA's offer and "further explained to Mr. Celaj that the Government would supersede with additional charges that significantly increased the mandatory minimum sentence Mr. Celaj would face if convicted." (*Id.*) According to Schneider, "Celaj stated he would not accept the Government's offer" of 22 years, but "would be willing to meet with and provide information to the Government for a proposed sentence of 15 years imprisonment or plead guilty without providing information for a proposed sentence of 20 years imprisonment." (*Id.*) Schneider states that he conveyed his conversation with Celaj to the AUSA, who ultimately rejected a 20-year deal and took the previous 22-year offer off the table. (*Id.* ¶ 15). Schneider was able to persuade the AUSA to extend the clock on the offer. On August 3, 2009, the AUSA informed Schneider that Celaj had until 5:00 p.m. the following day to accept the 22-year offer. Schneider states he informed the AUSA he would advise Celaj to accept the deal. (*Id.* ¶ 16).

Schneider's affirmation provides that he met with Celaj on August 4, 2009, informed him that 22 years was the government's final offer, advised him to accept, and again reiterated the effects of the government superseding the indictment "with additional 924(c) counts, which carried consecutive mandatory minimum sentences." (*Id.* ¶ 17). The affirmation further states that Celaj rejected the final offer, stating he would accept only "20 years or less." (*Id.*)

Celaj's affidavit is "unambiguous" that he would have accepted the plea absent Schneider's ineffectiveness, and the disparity between the 22-year offer and the mandatory minimum of 75 plus years Celaj faced at trial is significant, more than triple. Judge Patterson ultimately sentenced Celaj to more than 50 years.

Considering the large disparity between the government's offer and his sentencing exposure at trial, I find that Celaj's sworn statement is credible enough to warrant a hearing.

### b) Testifying Claim

Celaj's second ineffective assistance claim alleges that Schneider prevented him from testifying at trial.

"A defendant's right to testify in his own defense is personal and may not be waived by his attorney over the defendant's opposition, regardless of tactical considerations." *United States v. Noorzai*, 953 F.Supp.2d 499, 507 (S.D.N.Y. 2013). Defense counsel is obligated "to inform the defendant of the nature and existence of his right to testify" and fails to meet that obligation "'either by failing to inform the

defendant of the right to testify or by overriding the defendant's desire to testify…'" *Id.* (quoting *Brown v. Artuz*, 124 F.3d 73, 79 (2d Cir. 1977). As with all ineffective assistance claims, defendants must satisfy both the performance and prejudice prong of *Strickland*.

As the Second Circuit explained in *Chang v. United States*, when faced with an ineffective assistance claim that counsel denied the petitioner his constitutional right to testify in his own defense, it is "within the district court's discretion" not to hold to full-blown testimonial hearing when it "would add little or nothing to the written submissions" of petitioner and trial counsel. 250 F.3d 79, 86 (2d Cir. 2001). "Additionally, 'as any non-testifying defendant can claim that he was denied his right to testify after trial, a defendant bears the burden of proving his claim with detailed allegations.'" *McKenzie v. United States*, No. 13-cv-7510, 2015 WL 668018, at *10 (E.D.N.Y. Nov. 2, 2015) (quoting *Contreras v. United States*, No. 08-CV-1976, 2009 WL 1174730, at *4 (S.D.N.Y. Apr. 30, 2009) (citing *Chang*, 250 F.3d art 84–86)).

In his affidavits, Celaj states that he informed trial counsel he wished to testify on his own behalf. He states he made this request "after hearing the fraudulent testimony of two of the government's witnesses, Robert Melville and Jason Montello." (Celaj Supp. Aff. at ¶ 7).

According to Celaj's affidavit, trial counsel responded to his request to testify with the following: "over my dead body you will [testify] now let me pay attention because I have to hear what's going on." (*Id.*) Celaj states this conversation occurred at the defense table and would have been documented by notes he exchanged with trial counsel's paralegal. According to Celaj, Schneider's paralegal, Mayerlin Ulerio, sat at the defense table and "notic[ed] that [Celaj] was physically upset with Mr. Schneider denying

[him] the opportunity to testify." (*Id.* ¶ 8). Celaj states that Ulerio passed him a note asking what was wrong, to which he responded, explaining that he had asked Schneider to testify and was denied. (*Id.*) Celaj states that Ulerio responded, writing: "Please calm down Din Mr. Schneider knows what he is doing." (*Id.*) Celaj states that these notes between himself and Ulerio "should be still available and presented." (*Id.* ¶ 9).

Celaj additionally states that after proceedings had concluded on the day Schneider denied his request, Celaj wrote to his wife, Nicole recounting the events of the day. He explained specifically that Schneider prevented him from testifying on his own behalf. (*Id.* ¶ 10). Celaj states he told his brother, Jetmir, the same thing a few weeks later during a visit. (*Id.*)

In his affidavit, Celaj also detailed what he would have said on the stand. He states he wanted to tell the jury that he had committed burglaries, not robberies and that he "use[d] no guns at all." (*Id.* at ¶ 11). Additionally, he wanted to tell the jury about the times he served as a witness when cooperating with the government. Specifically, he wanted to explain that he "was told to lie and just go with the flow of things" by the "same agents" involved in his case. (*Id.*) He would have explained that the government knew he was lying and "let it go," and even told him what to say on the stand during a recess, causing the relevant defendants to get "all this time in prison for stuff they did not do or have any idea about." (*Id.*)  Celaj wanted to explain that he did what the agents asked because he "was scared and [he] did not want to die in prison." (*Id.*) Celaj states that in exchange for his testimony, agents promised him that they would help him with his immigration issues and give him a job as an informant. According to Celaj, the agents

told him to deny on the stand that the government made him any promises in exchange for his cooperation. (*Id.*)

Celaj also submitted an affidavit from Nicole Celaj who corroborated parts of Celaj's narrative. (13-cv-1290, ECF15 at 6). In her affidavit, Nicole Celaj states that she heard her husband ask Schneider to testify to which Schneider told Celaj "he was not to speak…something to the effect of 'over my dead body.'" (*Id.*)  She also confirms that Schneider's paralegal, Ulerio, observed the conversation. (*Id.*).

Schneider's affidavit provided his account of conversations he had with Celaj regarding testifying. (Schneider Aff. at 32). He states that he does "recall Mr. Celaj once raising the question of whether he should testify. [He] advised [Celaj] that it was [his] strong belief that [Celaj] should not testify…[but] he never 'forbade' or prevented [Celaj] from testifying. To [Schnieder's] recollection, [Celaj] never raised the issue again." (*Id.*) Schneider also described his "general" practice of advising clients regarding the decision to testify. (*Id.*)

Celaj provided more "than his own conclusory and self-serving statement[s], to establish that his right to testify was denied…" *McKenzie*, 2015 WL 6680108, at *11. But this potential evidence goes to the performance prong of his ineffective assistance of counsel claim only. With respect to prejudice, Celaj has a problem.

Because Celaj clearly cannot establish "a reasonable probability that, had he testified at trial, the jury would not have convicted him" of the charged offense, a hearing on this claim is unwarranted. *Noorzai*, 953 at 507; *see United States v. Fleurimont*, 401 Fed. Appx. 580, 583 (2d Cir. 2010) (quoting *Strickland*, 466 U.S. at 697) ("Where a claim of ineffectiveness is easily disposed of based on a lack of prejudice, 'a court need

not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies'").

According to Celaj's own affidavits, he wanted to admit to burglarizing and attempt to attack the credibility of the agents who investigated his case and the government's cooperating witnesses. Presumably, in undermining the agents' and witnesses' credibility, Celaj would have tried to persuade the jury to credit his characterization of his offenses as burglaries committed without firearms.

The government's cooperating witnesses described multiple instances in which they and Celaj impersonated officers to enter and rob the homes of drug dealers at gunpoint. (Tr. 239–40, 243–44, 481–83 (Bronx Robbery); 297–301, 498–99, 884–86 (Long Island Robbery); 305–09, 504–09, 888–905 (Attempted Robbery in Sayville); 514–28 (Pennsylvania Robbery). Additionally, the government provided ample evidence at trial supporting its position that Celaj committed robberies. In particular, the government presented wiretaps recording conversations Celaj had with an undercover officer wherein Celaj described stealing marijuana from drug dealers by impersonating a DEA agent and "knock[ing] down doors." (Tr. 96).

The impact of Celaj's proposed testimony would have depended on the jury's assessments of Celaj's credibility and the credibility of the government's cooperating witnesses and agents, as well as the other evidence presented at trial. Celaj provides no indication that his testimony would have introduced new evidence to support his account. His assertions about the nature of the offense would have been uncorroborated and contradicted by significant evidence introduced by the government at trial. Additionally, based on his affidavit, Celaj would have testified that he previously lied on the witness

stand and was guilty of burglary, which would have made him vulnerable to impeachment.

Based on the above review, I find that Celaj is not entitled to relief on this claim.

## II. SECTION 924(c) COUNTS

### A) LEGAL STANDARD

In pertinent part, § 924(c) states that it is unlawful for:

Any person who, during and in relation to any crime of violence…for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in the furtherance of any such crime, possesses a firearm.

Thus, the commission of a federal "crime of violence" is a requisite element of a § 924(c) crime. Congress defined a crime of violence as

an offense that is a felony and—
(A) has as an element, the use, attempted use, or threatened use of physical force against the person or property of another, or
(B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

§ 924(c)(3)(A)–(B).

Clause A is known as the elements or force clause,  and Clause B the residual or risk of force clause. To determine whether an offense is a crime of violence under § 924(c) and similar statutes, "courts employ what has come to be known as the 'categorical approach.'" *United States v. Hill*, 890 F.3d 51, 55 (2d Cir. 2018). ""Under this "approach," we evaluate whether "the minimum criminal conduct necessary for

conviction under a particular statute" necessarily involves violence."" *United States v. Hendricks*, 921 F.3d 320, 327 (2d Cir. 2019), citing *Hill*.

In *United States v. Johnson*, the Supreme Court considered the constitutionality of a nearly identical statute, the Armed Career Criminal Act ("ACCA") and struck down the ACCA's residual clause as void for vagueness. 135 S. Ct. 2551 (2016). In *Sessions v. Dimaya*, the Supreme Court applied *Johnson*'s holding to strike down the similar residual clause of 18 U.S.C. § 16(b). 136 S. Ct. 1204 (2018). Finally, in *United States v. Davis*, the Court extended the reasoning of *Johnson* and *Dimaya* to § 924(c). 139 S.Ct. at 2326–27. The Court explained that *Johnson* and *Dimaya* "teach that the imposition of criminal punishment can't be made to depend on a judge's estimation of the degree of risk posed by a crime's imagined 'ordinary case.'" *Id.* at 2326.

Attempting to avoid this problem, the government in *Davis* argued that the residual clause in § 924(c)—unlike its counterparts in § 924(e) and § 16(b)—did not require the same categorical approach of interpretation. *Id.* at 2327. The Court rejected this argument, holding that the "statutory text [of § 924(c)] commands the categorical approach," *Id.* 2328, and thus, § 924(c)(3)(B) is unconstitutionally vague. *Id.* at 2336.

In between *Dimaya* and *Davis*, the Second Circuit decided *United States v. Hill*, which held that Hobbs Act Robbery qualifies as a crime of violence under the elements clause of § 924(c)(3). 890 F.3d 51 (2d Cir. 2018). After *Hill* and *Davis*, the Second Circuit decided *United States v. Barrett*, which held that Conspiracy to Commit Hobbs Act Robbery is not a crime of violence under § 924(c)(3)(A). 937 F.3d 126 (2d Cir. 2019) ("*Barrett II*").

24

**B) DISCUSSION**

Celaj argues that, under the categorical approach, neither attempted nor completed Hobbs Act Robbery constitutes a crime of violence as defined by the elements clause of § 924(c)(3); therefore, all his 924(c) convictions must be vacated. The government argues that Celaj procedurally defaulted this argument by failing to raise it on direct appeal. Alternatively, the government argues that both completed and attempted Hobbs Act Robbery are crimes of violence, even under the elements clause of § 924(c) as interpreted pursuant to the categorical approach.

Addressing each issue in turn, I first explain why Celaj did not procedurally default his *Johnson*/*Dimaya*/*Davis* claims; second, why Hobbs Act Robbery is a crime of violence under the elements clause; and third, why Attempted Hobbs Act Robbery is not a qualifying predicate offense under § 924(c)(3)(B).

**1)       PROCEDURAL DEFAULT**

Celaj appealed his conviction and filed his original and amended habeas petitions before the Supreme Court decided *Johnson*. Counsel was appointed to Celaj just a little over two months after *Johnson*, and counsel requested to file a placeholder petition just over one year after the decision.

Cause allowing a petitioner to raise a habeas claim not brought on direct appeal "exists when the Supreme Court overturns a longstanding and wide practice to which

th[e] Court ha[d] not spoken, but which a near unanimous body had expressly approve." *Rosario Figue*roa, 2020 WL 2192536, at *3 (internal quotations marks omitted) (alterations in original).

At the time Celaj directly appealed his conviction, "prior to J*onson*, *Davis*, and *Barret II*, 'Second Circuit caselaw…foreclosed his § 924(c) argument.'" *Aquino v. United States*, Nos. 13-cr-536, 16-cv-4673, 16-cv-5229, 2020 WL 1847783, at *2 (S.D.N.Y. Apr. 13, 2020) (quoting *Camacho v. United States*, No. 13-cr-58, 2019 WL 3838395, at *2 (S.D.N.Y. Aug. 15, 2019)). Because "*Johnson* and *Davis* announced a 'new constitutional rule, representing a clear break with the past,'" Celaj's failure to press a claim challenging his § 924(c) convictions "'is sufficiently excusable to satisfy the cause requirement.'" *Id.* (quoting *Reed v. Ross*, 468 U.S. 1, 17 (1984)).

Celaj demonstrates prejudice because, for reasons explained below, attempted Hobbs Act Robbery is not a crime of violence, and thus, two of Celaj's § 924(c) convictions must be vacated.

## 2) HOBBS ACT ROBBERY

*Hill* is binding on this court—Hobbs Act Robbery is a crime of violence. Although the Second Circuit decided *Hill* prior to the Supreme Court's decision in *Davis*, the result is unchanged. *Davis* invalidated § 924(c)'s *residual* clause and *Hill* held specifically that Hobbs Act Robbery is a crime of violence under the statute's *elements* clause, which *Davis* left unchanged.

Because Second Circuit law instructs that Hobbs Act Robbery is a crime of violence, Celaj's petition with respect to his conviction on Count III of the indictment is without merit.

### 3) ATTEMPTED HOBBS ACT ROBBERY

The Second Circuit has not yet decided whether Attempted Hobbs Act Robbery is a crime of violence under the elements clause of § 924(c). Other circuit and district courts in this circuit, however, have weighed in on the issue and reached varying results. *See FNU LNU v. United States*,  Nos. 6-cr-172, 16-cv-4499, 2020 WL 5237798, at *5 (S.D.N.Y. Sept. 2, 2020) (concluding Attempted Hobbs Act Robbery is not a crime of violence and collecting cases); *United States v. Taylor* (4th Cir. 2020) (not a crime of violence); *United States v. Ingram*, 947 F.3d 1021, 1026 (7th Cir. 2020 (crime of violence); *United States v. Dominguez*, 954 F.3d 1251, 1255 (9th Cir. 2020) (crime of violence*); United States v. Hubert*, 918 F.3d 1174, 1212 (11th Cir. 2019) (*St. Hubert III*); *United States v. Culbert*, 453 F. Supp. 3d 595, 600 (E.D.N.Y. 2020) (not a crime of violence and collecting cases); *Cheese*, 2020 WL 705217 at *3–4; *Crowder v. United States*, Nos. 16-cv-4403, 5-cr-67-02, 2019 WL 6170417, (S.D.N.Y. Nov. 20, 2019) (crime of violence); *United States v. Brown*, No. 11-CR-63, 2019 WL 3451306, at *3 (E.D. Va. July 30, 2019) (crime of violence); *Banks v. United Stated States*, No. 2:09-CR-20491, 2019 WL 3225723, at *2 (W.D. Tenn. July 17, 2019) (crime of violence); *United States v. Tucker*, 2020 WL 93951 (S.D.N.Y. Jan. 8, 2020) (not a crime of violence).

For many of the same reasons articulated in Judge Pryor's dissent in *St. Hubert III* and Judge Swain's opinion in *FNU LNU*, I am persuaded that Attempted Hobbs Act Robbery is not a crime of violence as defined by § 924(c).

Pursuant to the categorical approach, I first "identify the elements of the predicate conviction by determining the minimal criminal conduct a defendant must commit to be convicted." *United States v. Moore*, 916 F.3d 231, 240 (2d Cir. 2019). Before turning to the specifics distinguishing attempt crimes from their corresponding substantive offenses, it is useful to identify the elements of Hobbs Act Robbery.

A person commits Hobbs Act Robbery when he "obstructs, delays, or affects commerce of the movement of any article or commodity in commerce, by robbery…or attempts or so conspires to do or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to" commit robbery as defined by the statute. 18 U.S.C. § 1951(a). The statute defines "robbery" in relevant part as "the unlawful taking or obtaining of personal property from the person or in the presence of another, against his will, by means of actual or threatened force, or violence, or fear of injury, immediate or future, to his person or property, or property in his custody or possession…" 18 U.S.C. § 1951(b)(1).

To be convicted of an attempt crime under federal law, "a defendant must (a) have the intent to commit the object crime and (b) engage in conduct amounting to a substantial step towards its commission." *Cheese*, 2020 WL 705217, at *2 (quoting *United States v. Yousef*, 327 F.3d 56, 134 (2d Cir. 2003). A defendant with the requisite intent intends to commit all elements of the target offense. As the Second Circuit has explained, "[a] substantial step must be something more than mere preparation, yet may

28

be less than the last act necessary before the actual commission of the substantive crime."
*United States v. Farhane*, 634 F.3d 127, 177 (2d Cir. 2011) (quoting *United States v. Manley*, 632 F.2d 978, 987 (2d Cir. 1980)).

As *FNU LNU* details, the Second Circuit has provided some parameters for conceptualizing the minimum conduct that would amount to a "substantial step" towards the commission of Hobbs Act Robbery. We know, for instance, that "reconnoiter[ing]" or casing a potential robbery target or possessing robbery paraphernalia qualify. *See United States v. Jackson*, 560 F.2d 112, 120 (2d Cir. 1977) (reconnoitering and paraphernalia). The Model Penal Code, persuasive authority for our purposes, also provides guidance. Under Section 5.01 of the Model Penal Code, if "it is strongly corroborative of [an] actor's criminal purpose," the following conduct constitutes a substantial step:

> (a) lying in wait, searching for or following the contemplated of victim of the crime;
> (b) enticing or seeking to entice the contemplated victim of the crime to go to the place contemplated for its commission;
> (c) reconnoitering the place contemplated for the commission of the crime;
> (d) unlawful entry of structure, vehicle or enclosure in which it is contemplated that the crime will be committed;
> (e) possession of materials to be employed in the commission of the crime, that are specially designed for such unlawful use or that can serve no lawful purpose of the actor under the circumstances;
> (f) possession, collection or fabrication of materials to be employed in the commission of the crime, at or near the place contemplated for its commission, if such possession, collection or fabrication serves no lawful purpose of the actor under the circumstances;
> (g) soliciting an innocent agent to engage in conduct constituting an element of the crime

Model Penal Code § 5.01; *see Culbert*, 435 F Supp. 3d at 600 (citing Model Penal Code as persuasive authority on this question). As these examples convey, conduct constituting a substantial step does not necessarily involve any iteration of force.

To illustrate, simply scoping out the location of the robbery (reconnoitering) qualifies as a substantial step, satisfying the threshold for conduct establishing an Attempted Hobbs Act Robbery.  When casing the target, the perpetrator contemplates force and intends to use, attempt or threaten to use force in the future, but the *conduct at that time* is non-violent.

Unlike for a substantive Hobbs Act Robbery, to obtain a conviction for an attempted Hobbs Act Robbery the government does not need to prove that a defendant attempted, threatened, or employed force.  No type of force is an "element" of the attempted version of this offense. Of course, the substantial step a particular defendant takes in furtherance of a Hobbs Act Robbery *could* involve force, but it need not.

Courts reaching a different result conflate intent and attempt, thereby "collaps[ing] the distinction between acts constituting an underlying offense and acts constituting an attempt of the underlying offense." *Cheese*, 2020 WL 705217, at *3. Starting from the premises that (1) as in this Circuit, Hobbs Act Robbery is a crime of violence and (2) that the intent element of a federal attempt crimes means an intent to commit every element of the target offense, erring courts make the logical leap that "an attempt to commit a crime should be treated as an attempt to commit every element of that crime; thus, when a substantive offense qualifies as a violent felony under [§ 924(c)'s elements clause], an attempt to commit that offense also is a violent felony." *St. Hubert III*, 918 F.3d at 1212 (J. Pryor, dissenting) (internal quotation marks omitted) (quoting *United States v. St. Hubert*, 909 F.3d 335, 351–53 (11th Cir. 2018) (quoting *Hill v. United States*, 877 F.3d 717, 719 (7th Cir. 2017)). The mistake lies in the conversion of "*intent* to commit each element of the substantive offense (proof of which is necessary to convict

someone of an attempt crime) into *attempt* to commit each element of the substantive offense (proof of which is not necessary to convict someone of an intent crime)." *Id.* (emphasis added).

## CONCLUSION

Celaj's convictions on Counts V and VII of the indictment are VACATED. Accordingly, he is entitled to be resentenced. However, because Celaj also has a surviving § 2255 claim for ineffective assistance of counsel that if granted might alter his sentence, the Court will rule on this surviving claim before holding the resentencing hearing required by the vacatur of the § 924(c) convictions.

On February 23, at 11:00 a.m., the Court will hold a telephonic status conference to discuss scheduling the evidentiary hearing on Celaj's plea-bargaining ineffective assistance of counsel claim.

SO ORDERED.

Dated:        February 1, 2021
              New York, New York

                            _____/s/ Andrew L. Carter, Jr._
                            **ANDREW L. CARTER, JR.**
                            United States District Judge